**DANIELI & C. OFFICINE MECCANICHE S.p.A., Plaintiff,**

v.

**MORGAN CONSTRUCTION COMPANY, Defendant.**

**No. CIV.A.02–40017–NMG.**

United States District Court, D. Massachusetts.

Feb. 25, 2002.

Tarek F. Abdalla, Reed Smith LLP, Pittsburgh, PA, for plaintiff.

Alicia L. Downey, Bingham, Dana & Gould, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

This action arises out of a contract dispute with respect to steel mill bearings manufactured by Defendant Morgan Construction Company ("Morgan"), a Massachusetts corporation and a supplier of steel mill equipment and component parts. The bearings are traded under the mark of MORGOIL. Plaintiff, Danieli & C. Officine Meccaniche S.p.A. ("Danieli Italy"), is a corporation organized under the laws of Italy engaged in the business of designing and constructing steel mills.

## I. *Background*

Plaintiff Danieli Italy claims that Morgan refuses to release certain steel mill bearings which Morgan has manufactured and for which Danieli Italy has paid in full. Danieli Italy has filed this action for replevin or, in the event this Court finds the dispute to be subject to arbitration, for injunctive relief in the form of replevin pending arbitration.

Defendant Morgan responds that this Court lacks jurisdiction over the dispute due to the arbitration clauses in the parties' agreements and, in the alternative, that replevin is unwarranted under the circumstances. Morgan claims to have rightfully withheld the steel bearings to offset a debt owed to it under a separate contract between Morgan and Danieli Corporation, a controlled subsidiary of Danieli Italy.

An action for breach of contract brought by Morgan against Danieli Corporation is pending in the Court of Common Pleas of Allegheny County, Pennsylvania ("the Pennsylvania lawsuit"). Danieli Corporation is organized under the laws of the State of Delaware and has a usual place of business in Pennsylvania. Danieli Italy responds that Danieli Corporation is its "third-tier subsidiary" but that the two corporations are wholly separate entities and are solely liable for their respective obligations. Morgan asserts that Danieli Italy exercises substantial control over Danieli Corporation and is, therefore, liable for the debts of its subsidiary.

The complaint in the Pennsylvania lawsuit is for goods sold and delivered. Morgan claims damages in excess of One Million dollars.

### A. Significant Contractual Provisions

On July 22, 1998, Morgan and Danieli Italy entered into a license agreement by which Morgan granted Danieli Italy a non-exclusive license to use MORGOIL Bearing Technology in exchange for Danieli Italy's promise to use its best efforts to promote the use of that technology. The license agreement included a choice of law and arbitration clause as follows:

> This Agreement shall be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts, U.S.A., and all disputes relating to or in any way connected to this Agreement shall be resolved by an arbitration to be conducted in the English language and held in Paris in accordance with the procedural rules of the International Chamber of Commerce.

On the same day, Danieli Italy entered into a similar license agreement with Morgan's English licensee, Kvaerner Metals Davy Ltd. ("Kvaerner") whose non-exclusive territory included Italy. That license agreement contained the same choice of law and arbitration provisions except that it provided that the agreement would be governed by the laws of Great Britain. Morgan also gave Danieli Italy a "side letter" in which Morgan promised to assume Kvaerner's obligations under the license if Kvaerner ceased to be Morgan's licensee.

Representatives of Morgan and Danieli Italy also affirmed a document entitled "Specific Commercial Terms and Conditions" ("the SCTC Document"). Although the SCTC Document is neither signed nor dated, Scott Simpson, Morgan's Vice President and General Manager of the MORGOIL Bearing Division, asserts that it was approved in conjunction with the license agreements. Every page of the Document is initialed by the Special Products Director of Kvaerner, Danieli Italy's Purchasing Manager and Simpson in order (according to Simpson) to renew their

adoption of its terms which were initially created in connection with an earlier agreement. Danieli Italy does not dispute Simpson's assertions.

The SCTC Document contains the following general provision, Penalty/Liquidated damages clause, limited liability provision and Jurisdiction designation:

> These terms and conditions apply to all Purchase Orders placed by Danieli & C. (hereinafter called the 'Purchaser') on Kvaerner Davy and Morgan Construction Company (hereinafter called the 'Seller') for the supply of MORGOIL Bearing equipment and services. Any variations to these terms and conditions shall be agreed by both the Purchaser and the Seller, and confirmed within the body of the specific Purchase Release....
>
> Liquidated damages for delay, caused solely, and directly, by the Seller's breach, shall be at the rate of 0.5% of the value of the delayed goods, per week of delay, up to a maximum of 5% of the value of the delayed goods....
>
> The remedies provided for under the Agreement, and any subsequent Purchase Releases, are limited to Liquidated Damages for delay and a claim for breach of Warranty. All other remedies are expressly excluded and accordingly, notwithstanding any other provision of the Agreement, the Seller shall not be liable to the Purchaser for any indirect, incidental, or consequential losses including, without limitation, loss of production, loss of profits or loss of contracts....
>
> All orders between the Purchaser and Seller shall, in all respects, be treated and construed under Swiss Law, including conflict of law provisions. Any dispute or difference between the parties arising out of, or in connection with this agreement, which cannot be resolved amicably between the parties, shall be settled by arbitration in accordance with the commercial rules of the International Chamber of Commerce. Any arbitration award shall be binding upon both parties. Arbitration, if required, will be held in Paris, France.

## B. Facts Giving Rise to this Dispute

On May 14, 2001, Danieli Italy sent a purchase order to Morgan for bearings to be used in a construction project in China ("the China Project"). Danieli Italy has entered into a $30,000,000 contract with a Japanese Company to construct the China Project. That contract provides for substantial damages and/or default termination in the event of noncompliance.

Upon receiving notice of completion from Morgan, Danieli Italy paid it $550,000 for the steel bearings and attempted to take possession of the product at Morgan's place of business. But despite such notice and receipt of payment in full, Morgan refused to tender the bearings.

In connection with a second construction project in Egypt, Danieli Italy entered into a contract with Kvaerner to supply the bearings required for that project. When Kvaerner ceased to be a licensee of Morgan, Danieli Italy placed a purchase order with Morgan on July 4, 2001 to complete the manufacture of the bearings. The purchase order called for payment of $515,700 by Danieli Italy which it allegedly stands ready to pay in full immediately. A dispute exists, however, with respect to whether the bearings under the Egyptian purchase order are, in fact, manufactured. Danieli Italy claims to have information confirming that the bearings are ready and that Morgan is withholding them while Morgan counters that the bearings are not ready and therefore cannot be transferred.

Both the China Project and Egyptian purchase orders contain arbitration clauses which state that "any dispute will be referred to the International Chamber of Commerce."

On January 24, 2002, Danieli Italy filed a complaint in this Court seeking replevin or injunctive relief requiring Morgan to release possession of the bearings manufactured for Danieli Italy under the China Project and Egyptian purchase orders. In the event the Court finds the dispute arbitrable, Danieli Italy seeks a Court order requiring Morgan "to maintain the status quo" pending arbitration by requiring it to allow Danieli Italy to take possession of the bearings.

On February 11, 2002, Morgan filed a motion to compel arbitration and an opposition to Danieli Italy's demand for replevin. Morgan contends that 1) the dispute must be arbitrated, 2) the contractual limitation of remedies provision precludes relief in the form of replevin, 3) Danieli Italy's request for replevin as interim relief is, in essence, a claim for a permanent injunction, and 4) under Massachusetts law, Danieli Italy is not entitled to injunctive relief on the merits.

## II. *Analysis*

### A. **Arbitration**

Defendant Morgan argues that the dispute concerns whether it is entitled to withhold the steel bearings which is an issue subject to the purchase orders and SCTC Document. Accordingly, Morgan contends, the dispute must be arbitrated pursuant to the terms of those documents. Plaintiff Danieli Italy responds that the dispute concerns whether it owes to Morgan a debt on behalf of its third-tier subsidiary which is subject to potential liability in the Pennsylvania lawsuit. As such, Danieli Italy argues, the disputed issue is collateral to the parties' agreements and is not subject to arbitration.

The issue in this case is, therefore, whether Morgan is entitled to withhold bearings which have been paid for in full by Danieli Italy to set off the latter's potential liability which is the subject matter of the pending Pennsylvania lawsuit.

■ An arbitration provision in a commercial agreement between parties from different countries is governed by Chapter Two of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 202. That chapter of the FAA implemented the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). 9 U.S.C. § 201. Where a commercial agreement involving a party who is not an American citizen contains an arbitration clause providing for arbitration in the territory of a signatory to the Convention, a district court must enforce such arbitration clause unless it is null and void, inoperative or incapable of being performed. *DiMercurio v. Sphere Drake, Insurance PLC. No 1 A/C*, 202 F.3d 71, 74 (1st Cir.2000); *Ledee v. Ragno, et al.*, 684 F.2d 184, 187 (1st Cir.1982).

In *Scherk v. Alberto–Culver*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Supreme Court enunciated the particular importance of upholding arbitration agreements in connection with international business transactions. Where a transaction involves international parties, subject matter and other contacts, considerable uncertainty exists with respect to the laws applicable to ensuing disputes. *Id.* at 515, 94 S.Ct. 2449. Arbitration provisions allow transacting parties to achieve certainty, orderliness and predictability and to avoid the risk that a dispute might be submitted to a forum hostile to one of the parties. *Id.* at 516, 94 S.Ct. 2449.

Notwithstanding the strong policy in favor of arbitration, courts cannot override the intent of the parties by compelling them to arbitrate where they have not agreed to do so. *Equal Employment Opportunity Commission v. Waffle House, Inc.,* —— U.S. ——, ——, 122 S.Ct. 754, 764, —— L.Ed.2d ——, —— (2002). An order to arbitrate should not, however, be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Communications Workers of America, et al.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Medika International, Inc. v. Scanlan International, Inc.,* 830 F.Supp. 81, 85 (D.P.R. 1993). Where an arbitration clause is broad, the presumption of arbitration is particularly applicable.

In the instant case, each agreement entered into by the parties contains a broad arbitration provision. The license agreements provide that "all disputes relating to or in any way connected to this Agreement shall be resolved by an arbitration." The SCTC Document states, "any dispute or difference between the parties arising out of, or in connection with this agreement, shall be settled by arbitration." Finally, the purchase orders themselves state that "any dispute will be referred to the International Chamber of Commerce." It is clear from the plain language of the agreements that the parties intended to arbitrate any disputes connected to those agreements.

The specific dispute here is whether Morgan is entitled to withhold the MOR-GOIL bearings pending the resolution of the Pennsylvania litigation. As such, that dispute concerns rights of possession to and ownership of the subject matter of the purchase orders. The SCTC Document and purchase orders are, therefore, directly related to those agreements.

## B. Injunctive Relief Pending Arbitration

Notwithstanding the arbitrability of the parties' dispute, this Court has the authority to grant preliminary injunctive relief to preserve the status quo pending arbitration provided the prerequisites for injunctive relief are met. *Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 51 (1st Cir. 1986).

In *Teradyne,* the United States District Court for the District of Massachusetts, in a contract dispute involving a contested arbitration clause, entered an interlocutory order enjoining the defendant from disposing of $7 million of its assets and directing the plaintiff to post a $25,000 bond. *Id.* at 44. The district court granted the injunctive relief because soon after the parties' dispute arose, the defendant announced that it would soon cease operations and sell substantially all of its assets to another corporation. The injunction was deemed necessary to insure that the defendant would have sufficient funds to satisfy a judgment pending the outcome of arbitration.

The defendant appealed the interlocutory order to the First Circuit Court of Appeals which, after finding that the plaintiff satisfied the prerequisites for injunctive relief, upheld the injunction. *Id.* at 57. It held that the Arbitration Act did not prevent district courts from granting injunctive relief in arbitrable disputes. The Court reasoned that the congressional desire to enforce arbitration agreements would be frustrated if courts were precluded from issuing preliminary injunctive relief to preserve the status quo. *Id.* at 51. If courts were not permitted to prevent parties from disposing of the assets necessary to satisfy an arbitration award, the

arbitration process would be meaningless. *See id.*

Morgan argues that if this Court were to allow Danieli Italy's motion for preliminary injunctive relief in the form of replevin, it would be disturbing rather than preserving the status quo. Morgan's argument is not without merit. Maintaining the status quo is to preserve the situation as it presently exists, Black's Law Dictionary 591 (1996), and, in most cases in which preliminary relief has been granted pending arbitration, parties have been restrained from altering the current situation. *See e.g. Teradyne,* 797 F.2d 43 (restraining defendant from liquidating assets); *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1067 (2d Cir.1972)(enjoining basketball player from playing for a competing team); *Organizing Committee for the 1998 Goodwill Games, Inc. v. Goodwill Games, Inc.,* 919 F.Supp. 21, 26 (D.D.C.1995)(enjoining termination of contract); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer,* 816 F.Supp. 1242, 1248 (N.D.Ohio 1992)(prohibiting former employee from soliciting former employer's clients).

The status quo in the instant case consists of the defendant's withholding of goods from the plaintiff, i.e. Morgan possesses bearings worth $550,000 to which Danieli Italy is entitled but for Morgan's claim to offset that amount against Danieli Italy's putative debt in Pennsylvania. In a literal sense, requiring the defendant to transfer to the plaintiff possession of the steel bearings would disturb that status quo. However, the ultimate, legitimate aim of Morgan to secure payment of its anticipated judgment is maintained if Morgan's possession of the bearings is exchanged for a guarantee to be made whole if it succeeds in the Pennsylvania lawsuit. *See e.g., PMS Distributing Polymembrane Systems, Inc. v. Huber & Suhner,* 863 F.2d 639, 642 (9th Cir.1988)(upholding writ of possession pending arbitration); *China National Metal Products Import/Export Co. v. Apex Digital, Inc.,* 155 F.Supp.2d 1174, 1179 (C.D.Cal.2001)(upholding writ of attachment in a dispute arbitrable under Chapter 2 of the FAA).

■ The principle underlying the authority of a district court to preserve the status quo pending arbitration is the moving party's right to retain its remedies during such proceedings. *See Teradyne,* 797 F.2d at 51. Requiring Morgan to transfer to Danieli Italy possession of the bearings in exchange for a bond in the full amount of the putative judgment in the Pennsylvania lawsuit would not require this Court to resolve the merits of any arbitrable dispute but rather would safeguard Morgan's remedy pending arbitration. *DiMercurio,* 202 F.3d at 77 (arbitration agreements do not divest courts of jurisdiction but simply prevent them from resolving the merits of arbitrable disputes).

On the other hand, the required divestment of the bearings in exchange for a bond would accomplish something unattainable by the strict maintenance of the status quo: Danieli Italy would avoid any alleged irreparable harm that may befall it if the injunction is not imposed and it succeeds at arbitration. It appears likely that if Danieli Italy is unable to acquire the subject bearings in the near future, its contracts under the China and Egypt Projects will be irrefutably jeopardized. Any subsequent finding at arbitration that Danieli Italy is entitled to the bearings would thus be futile.

■ Morgan argues, in the alternative, that the limitation of remedies clause in the SCTC Document forecloses Danieli Italy's right to injunctive relief. Limitation of remedy clauses are enforceable unless they are unconscionable or against

public policy. *Logan Equipment Corp. v. Simon Aerials, Inc.,* 736 F.Supp. 1188 (D.Mass.1990). The SCTC Document limits remedies to liquidated damages for delay and breach of warranty but the limitation of remedies provision does not preclude this Court from granting interim injunctive relief.

■■■ By its express terms, the remedies provision applies to damages after liability has been determined but does not apply to preliminary relief pending a determination of liability. Moreover, in order for a limitation of damages provision to bar suit for specific performance, the intent of the parties to provide an exclusive remedy must be explicit. *North American Consolidated, Inc. v. Kopka,* 644 F.Supp. 191, 193 (D.Mass.1986). Where the parties intend for the liquidated damages clause to be security for, rather than an alternative to, performance of the contract, specific performance is not barred. *Id.* As in *Kopka,* the parties here have not fixed a liquidated damages amount for the privilege not to perform. If that were the case, the parties would be faced with the absurd possibility that Morgan accepts payment in full, refuses delivery and becomes obligated to pay only 5% of the value of the goods as damages.

### C. Prerequisites for Injunctive Relief

A party seeking preliminary injunctive relief must prove (1) a likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) that such harm outweighs any harm which granting injunctive relief would inflict on the defendant and (4) that the public interest will not be adversely affected by the granting of the injunction. *TEC Engineering Corp. v. Budget Molders Supply Inc.,* 82 F.3d 542, 544 (1st Cir. 1996); *In re Websecure,* No 97–10662, 1997 WL 770414, *2 (D.Mass.).

### 1. Likelihood of Success on the Merits

■■■ Whether the plaintiff is likely to succeed on the merits depends on what law applies to the dispute under consideration. In the instant case, the parties' agreements contain choice of law clauses designating the application of the law of more than one state and country. The license agreements between Danieli Italy and Morgan and between Danieli Italy, Morgan and Kvaerner designate Massachusetts law and British law respectively. The SCTC Document provides that Swiss law will govern orders placed under agreements to which it applies and that any dispute arising out of such agreement will be settled by arbitration in accordance with the commercial rules of the International Chamber of Commerce. The plaintiff suggests that Massachusetts law should apply to its motion for a preliminary injunction. The purchase orders themselves contain no choice of law provision.

■■■ Where an agreement contains a valid arbitration clause as well as a choice of law provision, the determination of what law applies should be made by the arbitrator. *Medika,* 830 F.Supp. at 87 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 637 n. 19, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); *Protane Gas Co. of P.R., Inc. v. Sony Consumer Products Co.,* 613 F.Supp. 215, 218–19 (D.P.R.1985). In the instant case, the parties disagree with respect to what law applies to their dispute. The Court notes that a determination could be made that the law of any of four jurisdictions could apply: Massachusetts, Switzerland, Great Britain or Italy. The Court will not, however, delve further into the choice of law thicket because that is an issue more appropriately left for arbitration. For the

limited purpose of what law to apply in its consideration of the pending motion for injunctive relief, this Court opts to apply Massachusetts law.

██ Danieli Italy has demonstrated a likelihood of success on the merits on the specific issue before this Court in this forum, i.e. whether Danieli Italy is, without consideration of the issues pending in the Pennsylvania lawsuit, entitled to possession of the steel bearings for which it has paid. A seller has an obligation to transfer and deliver goods paid for in accordance with a contract. M.G.L. c. 106 § 2–301. Danieli Italy has paid in full for the bearings under the purchase order for the China Project. The bearings were certified by Morgan as ready for delivery on November 13, 2001. That notice prompted Danieli Italy's obligation to pay the remainder of the purchase price and its right to take possession of the bearings. After Danieli Italy paid the invoice, Morgan refused to relinquish possession. Ultimately, Danieli Italy is likely to prevail in that dispute.

██ With respect to the Egypt Project bearings, Danieli Italy has not demonstrated a likelihood of success on the merits. The parties dispute whether the bearings are ready at this time. In the usual course of business, Morgan notifies Danieli Italy that the bearings are ready as soon as it completes the manufacturing process. That notification initiates Danieli Italy's responsibility to pay for and take possession of the bearings.

Morgan has not notified Danieli Italy that the bearings for the Egypt Project are ready and claims that it informed Danieli Italy a few months ago that the manufacture of the bearings would be delayed. Danieli Italy responds that certain of its employees have been told by Morgan's personnel that the Egypt Project bearings are complete. Nevertheless, Danieli Italy has failed to produce evidence sufficient to demonstrate that it is entitled to possession of those bearings. The dispute over the status of the Egypt Project bearings is within the province of the arbitrator.

## 2. Irreparable Harm

██ Danieli Italy has demonstrated to the satisfaction of this Court that it will suffer irreparable harm in the absence of injunctive relief. Evidence submitted by the plaintiff shows that it has agreed to the schedule for the China Project which provides for erection of the mill between April and July, 2002. Danieli Italy must, therefore, deliver the bearings on or before March 15, 2002. The contract for the China Project allows for termination if Danieli Italy fails to deliver the equipment within 180 days of the scheduled delivery date. The contract is apparently worth $30 million to Danieli Italy, of which 80% is to be paid upon delivery of the equipment. If Danieli Italy is unable to perform its obligations under the China Project contract, it will likely suffer severe financial harm as well as irreparable damage to its reputation.

Because Danieli Italy has not yet demonstrated a likelihood of success on the merits with respect to the Egypt Project bearings, the Court will not address the plaintiff's evidence of irreparable harm with respect to that contract even though the Court anticipates that such harm is likely if Danieli Italy does not promptly acquire those bearings.

Morgan argues that a preliminary injunction is unwarranted in this case because Danieli Italy can avoid any purported harm by obtaining the bearings from another source or by paying Morgan the money it alleges it is owed in Pennsylvania and seeking recoupment in the event that court later finds in favor of Danieli Italy.

The parties dispute whether the bearings can be obtained from another party. Morgan has a patent on the MORGOIL bearings and the Egypt and China Project contracts apparently specify that MORGOIL bearings must be used. Morgan claims that Danieli Italy can obtain the bearings from other parties involved in the subject projects but even if that is so the evidence supports Danieli Italy's contention that under the project schedules there is insufficient time to procure them elsewhere.

Morgan's contention that Danieli Italy can pay now and recoup later is equally unpersuasive. To support that contention, Morgan cites *C.R. Bard, Inc. v. Cordis Corp.*, No. 89–0606, 1989 WL 63674 (D.Mass.)(Zobel, J.). In *C.R. Bard,* the defendant claimed that the plaintiff breached a license agreement between the parties by marketing for seven years medical devices that infringed a patent held by the defendant. *Id.* at *1. The defendant warned plaintiff that if it did not pay royalties in the amount of $1.7 million for marketing the disputed medical devices, the defendant would terminate the license. The plaintiff sought to enjoin that termination.

This United States District Court denied the plaintiff's motion for a preliminary injunction for failure to demonstrate that it would suffer irreparable harm because the plaintiff could have paid the disputed royalties and later sought recoupment if it was determined that the medical devices did not infringe the defendant's patents. *Id.*

Unlike the issue in *C.R. Bard,* the dispute in this case concerns a contested debt arising out of a contract entirely distinct from the contract at issue and involves a separate entity, albeit one for whose obligations defendant claims the plaintiff is responsible. The plaintiff here has paid in full for the bearings that are the subject matter of the contract. To require it to pay a contested claim against another entity for different goods pending resolution of that claim or the arbitrable issues puts the cart before the horse. Moreover, requiring such a preliminary payment would protract litigation if it is later determined that Danieli Italy is not responsible for the Pennsylvania debt, if any, whereas the posting of a bond in the full amount of such disputed debt would allow for the expeditious satisfaction of any imposed resolution.

■■■■ Injunctive relief is not warranted where damages suffice. *Medika v. Scanlan International, Inc.,* 830 F.Supp. 81 (D.P.R.1993). But in the instant dispute it is unlikely that damages will adequately compensate Danieli Italy if it is determined that it does not owe the supposed debt to Morgan. If the arbitrator finds that Morgan unlawfully withheld possession of the bearings and therefore breached the agreement between the parties to this action, Danieli Italy would, under normal circumstances, be entitled to all foreseeable damages, including its loss of the Project contracts. However, because there is a limitation of remedies clause in the contract expressly excluding such relief, Danieli Italy may not be adequately compensated by damages if it prevails.

### 3. Balance of Hardships

Balanced against Danieli Italy's credible showing of irreparable harm is the virtual absence of any evidence of harm to Morgan that will result from the entry of an injunction conditioned upon the posting of an adequate bond. In its pleadings, Morgan has failed to identify any such harm. At oral argument, counsel for Morgan argued that an injunction requiring it to allow Danieli Italy to take possession of the bearings in exchange for a guarantee

of the putative debt in Pennsylvania would harm Morgan because Morgan would not immediately receive the money to which it is allegedly entitled.

Morgan has conceded that it has no use for the bearings themselves and seeks only to be paid the money it claims to be owed by Danieli Italy in order to maintain its accounts current. It is unclear to this Court how a guarantee of the full amount of the claimed debt poses any threat of harm to Morgan. Even if this Court were to deny plaintiff's request for injunctive relief, the defendant would not be entitled to any payment (much less immediate payment) before completion of arbitration and the Pennsylvania lawsuit, unless such a ruling forced Danieli Italy to renegotiate, under duress, its contract for the China Project bearings. The possible harm to Danieli Italy of losing a multi-million dollar contract clearly outweighs any harm to Morgan caused by the entry of a conditional injunction.

#### 4. Public Interest

The public interest will be served by issuing the preliminary injunction because it may prevent the suspension or termination of a multi-million dollar contract involving other parties and affecting the public and the economy of another country.

#### ORDER

For the reasons set forth in the Memorandum above,

A. plaintiff's motion for injunctive relief pending arbitration (Docket No. 2) is ALLOWED in that:

1) Defendant shall, upon the posting of the bond referred to below, forthwith deliver to Plaintiff (at defendant's place of business) possession of the China Project bearings; and

2) Plaintiff shall post a bond in the amount of One Million Two Hundred Thousand dollars ($1,200,000) in accordance with Fed.R.Civ.P. 65(c) subject to further conditions mutually agreed upon by the parties or as proposed to this Court on or before Thursday, February 28, 2002;

and is otherwise DENIED; and

B. defendant's motion to stay the action and compel arbitration (Docket No. 10) is, subject to the conditions imposed by this Order, ALLOWED.

So ordered.